**JARDIM, MEISNER & SUSSER, PC**
Attorneys At Law
30B Vreeland Road, Suite 201
Florham Park, New Jersey 07932
973.845.7640
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOU ANN WOERNER as the beneficiary of Michael J. Woerner,<br><br>Plaintiff,<br><br>vs.<br><br>FRAM GROUP OPERATIONS, LLC and ERIC SCHUENEMAN,<br><br>Defendants. | Civil Action No: _____<br><br>**COMPLAINT** |

Lou Ann Woerner ("Plantiff"), the beneficiary of her deceased husband, Michael J. Woerner, by and through her undersigned counsel, and by way of this Complaint against FRAM Group Operations, LLC ("FRAM") and Eric Schueneman ("Schueneman" and, together with FRAM, the "Defendants"), alleges as follows:

**SUMMARY OF ACTION**

1. Plaintiff brings this Complaint for equitable relief seeking, among other things, a constructive trust for the benefit of Plaintiff in respect of employee life insurance benefits under the FRAM Group Operations, LLC Group Benefits Plan and/or a predecessor plan (the "Plan"), and with respect to which Plaintiff was promised, and/or is entitled to receive, as a result of the death of her husband, Michael J. Woerner (a former employee of FRAM). Additionally, Defendants breached their fiduciary duties to Plaintiff, and illegally interfered with her rights under the Plan and ERISA. Plaintiff additionally seeks any other equitable relief

appropriate and available under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001.

## THE PARTIES

2. Plaintiff is an individual residing in Morristown, New Jersey.

3. Plaintiff is the surviving spouse of Michael J. Woerner, a deceased individual formerly residing in Morristown, New Jersey ("Participant"). Participant was an employee of Honeywell International Inc., a corporation that employed Participant in this District ("Honeywell").

4. Defendant FRAM is the plan sponsor and plan administrator of the Plan, although it is believed that Defendant Schueneman is the co-plan administrator of the Plan. Defendant FRAM is also the "employer" of the participants of the Plan, and makes contributions to the Plan.

5. Defendant Schueneman is an individual who, during all relevant times, was and is Defendant FRAM's "Director of Compensation, Benefits and HRIS.[1]"

6. Each Defendant is a "fiduciary" of the Plan within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).

## JURISDICTION AND VENUE

7. Plaintiff asserts concurrent federal jurisdiction pursuant to § 502(e) of ERISA, 29 U.S.C. § 1132(e), and 28 U.S.C. § 1331.

8. Venue is proper in the District of New Jersey pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and pursuant to 28 U.S.C. § 1391(a), because Defendants violated ERISA in this District, reside in this District and are subject to personal jurisdiction in this District; and further because a "substantial part" of the events and omissions giving rise to the claims brought herein occurred in this District.

---

[1] Presumed to mean "Human Resources Information Systems."

## FACTUAL ALLEGATIONS

9. On or about late July of 2010, Participant was diagnosed with brain cancer.

10. On or about January 27, 2011, Honeywell and Defendant FRAM agreed to enter into a transaction pursuant to which, at some future date, Defendant FRAM would acquire from Honeywell one of Honeywell's business units. Participant was employed and performed services specifically for that business unit. The proposed sale was publicly disclosed – such disclosure filed publicly with the U.S. Securities and Exchange Commission - and Participant, as well as all other employees of Honeywell's to be acquired business unit, became aware that, upon the closing of the sale, they would become employees of Defendant FRAM, or an affiliate of Defendant FRAM.

11. Even the most-healthy of employees of Honeywell's to be acquired business unit began to consider whether the upcoming transfer of their employment would have a negative impact on employee benefits, such as medical, disability and life insurance. In this regard, it is not hard to imagine the concerns that an employee with brain cancer, and that employee's spouse, might have been considering at this time.

12. On or about June 24, 2011, Participant commenced a disability leave from work and was paid "short term disability" benefits.

13. On about July 29, 2011, Honeywell and Defendant FRAM closed the sale of the business unit and, as of such date, Participant became an employee of Defendant FRAM or its affiliate (the "Business Sale").

14. Participant and Plaintiff became very concerned about whether the Business Sale would have any adverse effect on Participant's employee benefits and insurance coverages. In this regard, Plaintiff actively, and with remarkable tenacity, commenced to seek information from Defendants. Defendants possess and must preserve telephone and email records and personnel files memorializing this tenacity.

15. Plaintiff tried to obtain this information from numerous sources, and from various personnel of both Honeywell and Defendant FRAM. For a long period of time, it seemed that no one could, or would, provide Plaintiff this information.

16. Plaintiff soon learned that it would be necessary to obtain that information from Defendant Schueneman, and solely Defendant Schueneman, because he was Defendant FRAM's "Director of Compensation, Benefits and HRIS."

17. Following the Business Sale, seeking information about the Plan, Plaintiff made several attempts to reach Defendant Schueneman at his business office, but he infrequently answered his phone, and never returned any voice mail messages. If contact was made with anyone during this time, no information was provided because "it was not yet available."

18. Following the Business Sale, seeking information about the Plan, Plaintiff wrote several messages to Defendant Schueneman by electronic mail, but he never responded.

19. Finally, and with great relief on the part of Plaintiff, on October 21, 2011, Participant received an email from Defendant FRAM titled "Message from FRAM Group HR - Benefits update for FRAM Group Employees." This email listed a number of benefit programs, including Supplemental Life Insurance. The email stated "Once you receive and review the benefits details, you may elect the plan of your choosing." The email also stated that "these benefits are designed for you to have access to the coverage you need in the case of an illness or other medical condition."

20. On or about November 8, 2011, a telephone conference occurred with Plaintiff, Participant, Defendant Schueneman, and a Honeywell Human Resources employee named Sharmela in which medical benefits and the transition of medical care to BCBS were discussed. During the telephone conference, Participant asked what his job would be when he came back to work. He wanted to work and was eager to know what he would be involved with at Defendant FRAM. Defendant Schueneman stated, in substance, "We would have to wait until that time comes." Participant followed up with emails on November 10th and again on

November 14th asking Defendant Schueneman to confirm the meeting notes. Defendants finally responded on November 18, 2011.

21. On November 18, 2011, Participant also received another message from Defendant FRAM titled "Message from FRAM Group HR - Benefits Update for FRAM Group Employees" which provided more detail on plan types and enrollment dates.

22. During late November 2011, Plaintiff seemed to at long last receive the information she was desperately seeking – in the form of a material communication relating to Defendant FRAM's employee benefit plans' open enrollment materials and election forms.

23. These "open enrollment" forms applied to employee benefits for calendar year 2012 – so that Participant could choose the particular medical, disability and welfare benefits and insurances that he desired for himself and his beneficiaries.

24. On December 2, 2011, Participant sent Defendant Schueneman an email asking how to get into the system to enroll for 2012 benefits. Participant and Plaintiff knew it was important to begin the enrollment process, but they had not yet received any communication on how to access the online website. On December 5th, 5 days after the open enrollment period began, Defendant Schueneman sent Participant a copy of a letter titled "Welcome to your 2012 FRAM Group Benefits Open Enrollment" which detailed how to access the system and enroll. The letter stated that the enrollment period was November 30th through December 12th.

25. As soon as Plaintiff had access to the enrollment forms online, she saw that there was a line item for Basic Life, 1.5 x salary and it indicated that Participant was enrolled. Plaintiff was so thrilled, that she called Defendant Schueneman by telephone. During this conversation, Plaintiff asked Defendant Schueneman, in substance:

> **"Will my husband have basic life insurance coverage at FRAM?"**
>
> Defendant Schueneman responded, unequivocally:
>
> **"Yes."**
>
> Plaintiff then asked:
>
> **"Are you sure?"**

Defendant Schueneman responded, unequivocally:

**"Yes" (the "Promise").**

26. Participant and Plaintiff worked together to choose their benefits and insurance coverages for 2012, and then "enrolled" in the Plan and "purchased" such benefits coverages and insurances by completing and executing the open enrollment forms and contracts.

27. Those open enrollment forms and contracts were processed by Defendant FRAM's "HRIS" systems. Defendant Schueneman is the "Director" of Defendant FRAM's "HRIS" systems.

28. Those open enrollment forms and contracts were made, executed and processed, and became binding, on December 7, 2011, at 12:26PM. At that time, Defendant FRAM and Defendant Schueneman both knew, or should have known, that Participant and Plaintiff had elected benefits under the Plan and "purchased" life insurance coverages under the Plan, effective January 1, 2012.

29. Those open enrollment elections clearly provide and memorialize the following life insurance purchase transactions and federal common law of ERISA contracts:

> BASIC LIFE INSURANCE
>
> EFFECTIVE DATE: JANUARY 1, 2012
>
> BENEFICIARY: LOU ANN WOERNER
>
> COVERAGE AMOUNT: $297,000
>
> **STATUS:  ENROLLED**
>
> VOLUNTARY LIFE INSURANCE
>
> EFFECTIVE DATE: JANUARY 1, 2012
>
> BENEFICIARY: LOU ANN WOERNER
>
> COVERAGE AMOUNT: $198,000
>
> COST: $16.91 (per month)
>
> **STATUS:  ELECTED**

(emphasis added).

30. Those elections were valid and effective. Further evidence that these insurance transactions were effective is that Participant and Plaintiff also elected medical insurance through the Plan, and that insurance was provided and became effective as of January 1, 2012.

31. On December 8, 2011, one day after executing the open enrollment elections and electing insurance coverages, Participant and Plaintiff had several questions about the benefits that they just elected. For example, they asked Defendant Schueneman questions about the voluntary life insurance guaranteed coverage of $350,000 (the maximum amount guaranteed to all employees without requiring evidence of insurability). They wanted to know how to sign up for the full amount. The enrollment form required the amount to be a multiple of salary, and two times the Plaintiff's salary would exceed the $350,000 guaranteed amount. They only signed up for one time his salary ($198,000) and submitted it knowing that they could change this amount before December 12, 2011. They also asked for a Summary Plan Description. Defendant Schueneman never got back to Plaintiff or Participant, and Defendants failed to provide Plaintiff and Participant with a copy of the Summary Plan Description.

32. After suffering beside her cancer-stricken husband for several months, and after enduring the stress from uncertainty about the sale of her husband's business unit employer to a foreign private equity holding company as a new employer, and after experiencing on-going frustration of not being able to get any information whatsoever about the Plan or her husband's life insurance coverages (which coverages were critical for her personal security and survival), Plaintiff was ecstatic that she finally received confirmation that Participant would have life insurance benefits under the Plan.

33. Plaintiff was so relieved, and so emotional after receiving this critical news and receiving the Promise, that after first sharing this information with Participant, she instantly telephoned her friend and personal financial advisor, Fred Schaeffer, to share the news and describe the specifics of her conversation with Defendant Schueneman. She also immediately shared this news with other friends and family members. All of these friends and family

members were aware of this matter and had been providing her with emotional support, comfort and advice.

34. Defendant Schueneman, at all times, was and is a fiduciary of the Plan, both because of his title, duties and responsibilities to Defendant FRAM, and to the Plan, and also for the very simple reason that there existed no other natural person who had any information about the Plan, or made any decisions or exercised any discretion in respect of the Plan. At all times, Defendant Schueneman was also a fiduciary because he had full discretionary authority to act on behalf of the Plan, and oftentimes exercised that discretionary authority.

35. In making the Promise, Defendant Schueneman acted in a fiduciary capacity in respect of the Plan.

36. In making the Promise, Defendant Schueneman acted on behalf of Defendant FRAM and with the authority or apparent authority of Defendant FRAM.

37. Defendant Schueneman, in his capacity as a Director of Compensation, Benefits and HRIS of Defendant FRAM, was authorized to make the Promise. The making of the Promise was a fiduciary act.

38. Participant was a participant of the Plan, within the meaning of ERISA and within the meaning of the Plan, as of January 1, 2012 – and probably before that time as well. Plaintiff was a beneficiary of the Plan, within the meaning of ERISA and within the meaning of the Plan. And Plaintiff was during these times a beneficiary of the Plan, within the meaning of ERISA and within the meaning of the Plan.

39. Effective January 1, 2012, Participant's beneficiary, Plaintiff, was (or should have been absent only the fiduciary breaches of Defendants and acts that violated ERISA) covered by Basic Life Insurance and Voluntary Life Insurance in the amounts described above, and entitled to life insurance benefits under the Plan upon Participant's death.

40. Pursuant to the Promise, Participant and Plaintiff were promised life insurance benefits under the Plan, effective January 1, 2012.

41. Participant and Plaintiff relied upon the Promise.

42. It was reasonable for Participant and Plaintiff to rely upon the Promise because the Promise was documented, memorialized, and set forth in the Plan's open enrollment process, and they actually received written confirmation that the Basic Life Insurance coverage and Voluntary Life Insurance coverage were effective and in place. Even more so, such reliance was reasonable because, on January 1, 2012, the medical benefits that Participant and Plaintiff elected became effective.

43. In December of 2011 and January of 2012, Defendant Schueneman continued to mostly ignore Plaintiff's subsequent communications, including written communications to his business email account hosted by Defendant FRAM.

44. During January 2012, Participant and Plaintiff realized that premium contributions for benefits (such as for <u>Voluntary Life Insurance</u>) were not deducted from any of Participant's compensation (which he was not receiving) or disability checks, and that no other communication relating to the payment of premium contributions had been issued to them from Defendants. For example, the Voluntary Life Insurance required a monthly premium contribution of $16.91, and they were not sure whether the monthly payments would be deducted out of Participant's monthly disability checks, or whether Participant would need to mail in a check every month. So Plaintiff spoke with Defendant Schueneman asking for information about these premium payment obligations and issues, and also other issues. Defendant Schueneman did not respond in writing to this email.

45. It should be noted that Participant and Plaintiff did not expect any such communication in respect of the <u>Basic Life Insurance</u>, because the entire cost of that coverage was to be paid by Defendant FRAM, and therefore no employee co-payment or premium was required or applicable.

46. Nevertheless, Participant and Plaintiff grew concerned over the possibility of some type of administrative error on the part of Defendants that might, at the very least, cause stress and bureaucratic nightmares, and at the very worst could impair the benefits and insurance

＊

coverages. Defendant Schueneman's continued silence was concerning (and a violation of ERISA).

47. Plaintiff continued to attempt to reach Defendant Schueneman. Finally, in or about mid to late January of 2012, Plaintiff did reach Defendant Schueneman by telephone and she explained to him that she had not been provided any communication relating to the payment of premium costs for benefits (including Voluntary Life Insurance benefits).

48. Defendant Schueneman responded to her, in substance:

**"Don't worry, we are just putting those letters together now**

**and they will explain how to pay by check. You are covered."**

**(the "Promised Letter").**

49. Plaintiff clearly recalls that conversation. One reason that she recalls that conversation so well is that she discussed the substance of it with Participant, and she recalls that, on the date of that call, and for a few days immediately before and after, Participant was doing very well from a medical and mental standpoint. Participant was of clear mind, and focused, and he even discussed with Plaintiff that Participant wanted to contact his supervisor and have a discussion about work issues and making accommodations for him to return to work. Plaintiff clearly recalls this conversation with Participant because Participant was previously granted permission by Honeywell to set up, and work from, a "home" office, and Plaintiff recalls discussing with Participant the details of Participant returning to work but working from the home office. Further, Plaintiff recalls that, during January of 2012, Participant was lucid, sharp, and thinking about "logistics" on behalf of his employer. He could have, and would have, attended work for at least a few days if he had the information about the Plan that he and Plaintiff were so desperately seeking, and but for Defendant Schueneman's breaches of fiduciary duty, acts and omissions.

50. The Promised Letter never came.

51. The promise of the Promised Letter that would explain "how to pay by check" was a material misrepresentation, and was possibly fraudulent.

52. The Promise was a material misrepresentation.

53. Participant and Plaintiff reasonably relied on these material misrepresentations, to their detriment.

54. Upon information and belief, around this time, Defendant Schueneman gained knowledge and information indicating that it might be necessary for Participant to attend work for a day in order to become eligible for life insurance benefits under the Plan.

55. Upon information and belief, the insurance company had, by this time, already communicated to Defendants that there would be a coverage issue for the life insurance benefits, and they explained that issue precisely to Defendants.

56. However, Defendant Schueneman never shared this information with Participant or Plaintiff, deliberately withholding it to the detriment of Participant and Plaintiff. However, upon information and belief, Defendant Schueneman knew, or should have known, that he had an ethical, legal and fiduciary duty to share this information.

57. Upon information and belief, about this time, Defendant Schueneman gained knowledge and information indicating that he might have made material misrepresentations to Plaintiff with regard to the Promise and about the Promised Letter.

58. Upon information and belief, about this time, Defendant Schueneman gained knowledge that he breached his fiduciary duties to Participant and Plaintiff.

59. Upon information and belief, about this time, Defendant Schueneman made the decision to attempt to protect his employer, Defendant FRAM, from legal liability, instead of sharing critical information about the Plan with Participant and Plaintiff.

60. Upon information and belief, Defendant Schueneman intentionally withheld this critical information from Participant and Plaintiff, acting in his personal best interests.

61. Defendant Schueneman interfered with the rights of Participant and Plaintiff under ERISA.

62. As indicated above, the Promised Letter never came.

63. If Defendant Schueneman disclosed the critical information about the Plan – that Participant was required to attend work for one day on or after January 1, 2012 in order to become eligible for life insurance benefits under the Plan – he could have, and would have, done so.[2]

64. Participant and Plaintiff relied upon the Promise to their material detriment.

65. Defendants, and their insurers, withheld critical information about the Plan from Participant and Plaintiff until such time as Participant was already dead from brain cancer.

66. Participant passed away on February 24, 2012.

67. On March 6, 2012, Plaintiff and Defendant Schueneman had a telephone conversation regarding benefits under the Plan in which, yet again, Defendant Schueneman indicated to Plaintiff that he still had to "work on it." Plaintiff recalls that conversation very well because she remembers feeling that it was "cold comfort."

68. Still devastated by her husband's death, and frustrated, anxious and furious as a result of Defendants' inhumane treatment of her, on April 9, 2012, Plaintiff sent an email to Defendant Schueneman at his business email account hosted by Defendant FRAM stating:

> **Eric,**
>
> **It has been over a month since my husband's passing and telephone conversation with you regarding life insurance benefits. When will I**

---

[2] "[A] fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." Horn v. Cendant Operations, Inc., 69 Fed. Appx. 421, 427 (10th Cir. July 3, 2003) (unpublished) (quoting Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1182 (3d Cir. 1996)). "[T]o make out a breach of fiduciary duty claim [under ERISA], a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001); see Owen v. Regence Bluecross Blueshield of Utah, 388 F.Supp.2d 1318, 1333 (D. Utah 2005) (applying the test from Daniels) (citing Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 384 (3d Cir. 2003) (adhering to the Daniels test)). And thus, a "fiduciary's misrepresentation or failure to disclose is material 'if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed . . . decision.'" Horn, 69 Fed. Appx. at 427 (quoting Jordan v. Fed. Express Corp., 116 F.3d 1005, 1015 (3d Cir. 1997) (alteration in original).

**be contacted on the payout of this benefit? Every time I call you have indicated that it would be just a few more days before you can update me. Can you please tell me when I will be contacted.**

Defendant Schueneman did not respond to this email.

69. Plaintiff never received any life insurance benefits from the Plan. Instead, Defendants forced Plaintiff to deal with the insurance company directly and alone, knowing full well that the insurance company was not going to make any payments, because they told Defendant Schueneman so. Defendant Schueneman completely ignored the fact that Defendants and/or the Plan remain obligated to pay those benefits whether the benefits were insured or not insured. And Defendant Schueneman completely ignored the fact that he personally promised those benefits, and that he was the central and sole responsible individual for this despicable mess. Stated another way, Defendants are obligated to assure life insurance under the Plan for Participant and for the benefit of Plaintiff by virtue of their promises.

70. Soon after Plaintiff received the shocking news that the Defendants breached the Promise, and violated ERISA, and forced her to deal with the insurance company alone (while knowing full well that this avenue would be futile), Plaintiff became aware that the Plan was never memorialized into a writing, and that no "plan document" even existed.

71. However, § 402 of ERISA, 29 U.S.C. § 1102 requires that ERISA plans, such as the Plan, be memorialized in writing so as to protect participants and beneficiaries, and to avoid the exact type of situation pleaded herein. How can an employer administer and operate an ERISA plan if there are no benefit eligibility provisions?

72. After a purported denial of her life insurance benefits under the Plan, on August 12, 2012, Plaintiff requested from the Plan's "plan administrator" (in accordance with Section 104(b)(4) of ERISA) a copy of the "plan document" for the Plan. By cover letter dated September 10, 2012, Defendant Schueneman sent Plaintiff a copy of the Plan document – **however that Plan document, although purportedly "effective" January 1, 2012, was not**

memorialized in writing, approved or adopted until September 10, 2012 – well after the death of Participant and even after the date upon which Plaintiff requested a copy.

73. The Plan document was never adopted until well after the Plan came into purported existence, after the Promise, after the death of Participant, and after Plaintiff was denied benefits. In fact, the Plan document was not adopted until after Plaintiff asked for a copy.

74. Shockingly, and extraordinarily, **DEFENDANTS (THROUGH THEIR INSURER) DENIED PLAINTIFF LIFE INSURANCE BENEFITS UNDER THE PLAN EVEN THOUGH THERE WAS NOT A PLAN DOCUMENT OR ANY PLAN PROVISIONS WHATSOEVER.**

75. Defendant Schueneman's September 10, 2012 cover letter to Plaintiff, sent on behalf of Defendant FRAM, is extraordinary.

76. The acts, omissions and misconduct of Defendants, and their failures with regard to the administration and operation of the Plan, and their failure to memorialize the Plan into writing, and their failure to adopt and approve the Plan, and their material misrepresentations and withholding of critical Plan information, and their breaches of promises in respect of the Plan, are extraordinary.

77. Through their above-pleaded acts and omissions, as fiduciaries of the Plan, Defendants failed to discharge their duties solely in the interest of the participants of the Plan and their beneficiaries.

78. Through their above-pleaded acts and omissions, as fiduciaries of the Plan, Defendants failed to discharge their duties with care, skill, prudence and diligence.

79. Through their above-pleaded acts and omissions, as fiduciaries of the Plan, Defendants violated their respective fiduciary duties under § 404(a) of ERISA, 29 U.S.C. § 1104(a) to Participant and Plaintiff and as a direct result caused them substantial harm.

80. Plaintiff is not required under ERISA to exhaust administrative remedies, because she is not seeking relief under the Plan (and because the Plan did not really exist during the relevant time periods). In this District, exhaustion is not required with respect to claims for

equitable relief, breach of fiduciary duty and statutory violations of ERISA. Also, exhaustion would be futile because Defendants purportedly delegated the appeals procedure to their third party insurer and that insurer has already indicated to Defendants that they will not pay the benefits. Upon information and belief, that purported delegation is ineffective under ERISA because, among other reasons, it was not authorized or memorialized in writing until after the death of the Participant.

## FIRST COUNT
## ERISA EQUITABLE ESTOPPEL

81. Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

82. Defendants promised Participant and Plaintiff life insurance benefits under the Plan.

83. Participant and Plaintiff relied on that promise.

84. That reliance was reasonable.

85. Participant and Plaintiff relied on that promise to their material detriment by not taking certain steps that would have assured eligibility for benefits.

86. Plaintiff is entitled to life insurance benefits under the Plan by virtue of the principles of equitable estoppel under ERISA, as recognized under the laws of this District, to be funded by a constructive trust to attach to Defendants, or such other appropriate equitable remedy permitted under ERISA.

## SECOND COUNT
## ERISA EQUITABLE RELIEF FOR MATERIAL MISREPRESENTATION

87. Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

88. Defendants promised Participant and Plaintiff life insurance benefits under the Plan.

89. That promise was a material misrepresentation.

90. When Defendants obtained information that allowed them to realize that they made that material misrepresentation, they withheld, and intentionally withheld, that information from Participant and Plaintiff, and thereafter failed to take any steps whatsoever to correct that misrepresentation.

91. That material misrepresentation caused Participant and Plaintiff to incur material losses and damages.

92. Plaintiff is entitled to life insurance benefits under the Plan by virtue of the principles of equitable material misrepresentation under ERISA, as recognized under the laws of this District, to be funded by a constructive trust to attach to Defendants, or such other appropriate equitable remedy permitted under ERISA.

### THIRD COUNT
### VIOLATION OF ERISA
### BREACH OF FIDUCIARY DUTIES

93. Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

94. Defendants' acts, omissions, misconduct and failures, including acts to intentionally withhold information from Participant and Plaintiff, and failure to memorialize the Plan in writing as required under ERISA, and failure to cause the Plan to obtain appropriate insurance to fund the disability benefits promised to Participant and Plaintiff, all as pleaded above, constitute breaches of fiduciary duty by Defendants under § 404 of ERISA, 29 U.S.C. § 1104.

95. Plaintiff, and the Plan, has incurred material losses and damages as a result of the aforesaid.

96. Defendants have liability, and Defendant Schueneman has personal liability, to Plaintiff and the Plan with respect to such losses, and Plaintiff is entitled to receive payments from Defendants with respect to such losses, and Plaintiff is also entitled to other appropriate equitable remedies permitted under ERISA.

### FOURTH COUNT
### VIOLATION OF ERISA
### CO-FIDUCIARY LIABILITY

97. Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

98. Each Defendant is subject to co-fiduciary liability under § 405 of ERISA, 29 U.S.C. § 1105 with respect to the fiduciary breaches of the other Defendant, and Defendant Schueneman has personal liability.

## FIFTH COUNT
## VIOLATION OF ERISA
### STATUTORY ILLEGAL INTERFERENCE

99. Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

100. Defendant Schueneman failed to obtain, arrange or negotiate for insurance coverage with a third party insurer with respect to life insurance benefits under the Plan that were promised to Participant and Plaintiff, and, after realizing that he failed to obtain such coverage, he interfered with the rights of Participant and Plaintiff under ERISA for the purpose of assisting Defendant FRAM to avoid the liability for the uninsured life insurance benefits owed to Plaintiff.

101. Defendant Schueneman's conduct as pleaded above was in violation of § 510 of ERISA, 29 U.S.C. § 1140.

102. Such violations caused harm and damages to Plaintiff, and Defendants are liable for such damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that the Court enter judgment against Defendants as follows:

(1) Order appropriate equitable relief for Plaintiff under the principal of ERISA equitable estoppel as applied by this District;

(2) Order appropriate equitable relief for Plaintiff under the principal of ERISA material misrepresentation as applied by this District;

(3) Order a constructive trust be imposed upon, and attach to, Defendants, in order to assure that Plaintiff obtains appropriate equitable relief;

(4) Declare that the Defendants breached their respective fiduciary duties to the Plan and to Participant;

(5) Order statutory damages and penalties against Defendant Schueneman with respect to his illegal interference with the rights of Participant and Plaintiff;

(6) Order that Defendants pay Plaintiff's reasonable attorneys' fees and costs of this action pursuant to the provisions of § 502(g) of ERISA, 29 U.S.C. § 1132(g); and

(7) Such other and further equitable relief as the Court deems just and proper.

> Respectfully submitted,
>
> **JARDIM, MEISNER & SUSSER, PC**
> Attorneys for Plaintiff
>
> By: _____
> Richard S. Meisner

Dated: October 19, 2012