UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| LOU ANN WOERNER, as the beneficiary of Michael J. Woerner, | Civil Action No. 12-6648 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| FRAM GROUP OPERATIONS, LLC, and THAT CERTAIN EMPLOYEE WELFARE BENEFIT PLAN SPONSOED BY FRAM GROUP OPERATIONS, LLC, | |
| Defendants. | |

**CHESLER**, District Judge

Plaintiff Lou Ann Woerner ("Plaintiff") brings this action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover life insurance proceeds allegedly owed to her as the beneficiary of an employee benefit plan (the "Plan") established by her late husband's employer, FRAM Group Operations, LLC ("FRAM"). Plaintiff now moves for summary judgment against FRAM and the Plan, pursuant to Federal Rule of Civil Procedure 56. (ECF No. 112.) FRAM opposes the motion. (ECF No. 122.) The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion will be denied.

**I.    BACKGROUND**

Plaintiff's late husband, Michael Woerner, was diagnosed with brain cancer in July 2010 while he was an employee of Honeywell International Inc. ("Honeywell"). (ECF No. 113,

Plaintiff's Statement of Undisputed Facts ("SUF"), ¶ 11, 14). In June 2011, Mr. Woerner commenced short-term disability leave. (SUF ¶ 15.) Approximately one month later, Honeywell sold Mr. Woerner's business unit to FRAM, thereby making him an employee of the latter. (SUF ¶¶ 12-13.) Mr. Woerner remained on short-term disability leave as an employee of FRAM until his death in February 2012. (SUF ¶¶ 46-47.)

On October 21, 2011, several months after FRAM acquired Mr. Woerner's business unit, FRAM sent its employees an email announcing that "Open enrollment" for 2012 benefits would "begin on or about November 28, 2011 and run through December 9, 2011" and that "[e]nrollment into the 2012 benefits [would] be conducted via a web-based system or via telephone." (SUF ¶¶ 16-18; ECF No. 14, January 19, 2017, Declaration of Alyssa Pyrich ("Pyrich Cert."), Ex. C.) One week later, on October 28, 2011, FRAM sent its employees another email stating that "[a]s part of your overall compensation and benefits package, we are pleased to share with you the following details regarding your health care options . . . [which] employees will be able to elect . . . during the 2012 Open Enrollment period." (SUF ¶ 19; Pyrich Cert., Ex. D.) This email included information for "Basic Life/AD&D," for which "coverage [would be] provided by FRAM Group at no cost to employee[s]" and for which "CIGNA" would be the "carrier"; and "Voluntary Life/AD&D," for which "coverage" might be "purchase[d] . . . based on [an employee's] annual salary" "at each open enrollment [period]" and for which "CIGNA" would also be the "carrier." (Id.)

Approximately one month later, on November 29, 2011, FRAM distributed a collection of power point slides that described, among other things, the 2012 life insurance benefits and the process of enrolling in benefits. (SUF ¶¶ 21-25; Pyrich Cert., Ex. F.) The final power point slide

stated that "[a]ll benefit elections/changes will be effective 1/1/12" and that enrollment was "[m]andatory."  (Pyrich Cert., Ex. F.)

Thereafter, on December 5, 2011, FRAM sent an email that provided detailed instructions on how to enroll in 2012 benefits.  (SUF ¶¶ 27-28; Pyrich Cert., Ex. G.)  Subsequently, Mr. Woerner filled out and submitted his benefit election and enrollment forms.  (SUF ¶ 30.)  On December 7, 2011, Mr. Woerner received a "Confirmation Statement," which "list[ed] [his] 2012 benefit elections, as well as . . . benefits provided . . . by the company."  (SUF ¶ 31; Pyrich Cert., Ex. H.)  The Confirmation Statement provided that Mr. Woerner was "Enrolled" in "Basic Employee Life/AD&D Insurance (1.5 times Salary);" that "Lou Ann Woerner" was the "100% Primary" beneficiary of his basic life insurance; that the "Coverage Amount" was $297,000.00; and that the "Change Effective Date" was January 1, 2012.  The Confirmation Statement also provided that Mr. Woerner had "Elected" "Voluntary Employee Life/AD&D Insurance" at "1 x Your Pay;" that "Ann Woerner" was the "100 % Primary" beneficiary of his voluntary life insurance; that the "Volume" was $198,000.00; that the "Change Effective Date" was January 1, 2012; and that the "Cost" was $16.91 per pay period.  (SUF ¶ 31; Pyrich Cert., Ex. H.)

After Mr. Woerner's death, Plaintiff never received proceeds from the basic life or voluntary life insurance benefits, and, in October 2012, she commenced the instant action.  Her amended complaint, filed in September 2014, asserts a single claim for denial of benefits in violation of Section 1132(a)(1)(B).  After Plaintiff filed her amended complaint, she and FRAM both filed motions for summary judgment.  By order dated June 30, 2015, this Court denied Plaintiff's motion and granted FRAM's motion.  Plaintiff appealed, and on September 12, 2016, the Court of Appeals for the Third Circuit vacated this Court's prior order, remanding the case

3

"for application of the correct standard as to the existence and terms of the Plan at the time that [Plaintiff's] benefits, if any, vested." Woerner v. FRAM Grp. Operations, LLC, 658 F. App'x 90, 97 (3d Cir. 2016).

Plaintiff now moves again for summary judgment. She contends that FRAM established an 'informal' benefit plan, the terms of which were not set forth in a formal written instrument, and she argues that, under the terms of this informal plan, she is entitled to the life insurance proceeds. FRAM, for its part, does not dispute the existence of an informal plan. However, it argues that there exists a genuine issue as to whether Mr. Woerner's life insurance coverage became effective prior to his death in February 2012.[1] FRAM contends that certain internal documents, emails between it and CIGNA, the plan's insurer, could reasonably show that the plan contained an 'actively-at-work' provision. Such a term would have required that an employee work at least one day in 2012 before his or her life insurance benefits became effective. Because Mr. Woerner remained on short-term disability leave until his death in February 2012, FRAM argues that there is a genuine issue as to whether his coverage under the applicable life insurance plan became effective at all.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "In considering a motion for summary judgment, a district court may not

---
[1] In its moving brief, FRAM also argues that there exists a genuine issue as to whether it is the proper defendant of Plaintiff's denial of benefits claim. Because the Court will deny Plaintiff's motion on other grounds, it need not address this alternative basis.

4

make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255)). Consequently, "[s]ummary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (internal quotation marks omitted). "If reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. Anderson, 477 U.S. at 250-51.

On a motion for summary judgment, the moving party bears the initial burden of establishing the basis for its motion and demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once that party has satisfied its burden, the party opposing the motion must show that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The non-moving party cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

## III. DISCUSSION

ERISA empowers a "participant [in] or beneficiary" of an employee benefit plan to bring an action to "recover benefits due to him under the terms of his [or her] plan . . . ." 29 U.S.C. § 1132(a)(1)(B). To prevail on a claim under Section 1132(a)(1)(B), a plaintiff must establish that he or she has "'a right to benefits that is legally enforceable against the plan,' and that the plan

5

administrator improperly denied those benefits." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (quoting Hooven v. Exxon Mobil Corp., 465 F.3d 566, 574 (3d Cir. 2006).

1. *Existence of a Plan*

The Third Circuit has recognized the existence of informal plans, those not established through a written instrument in accordance with 29 U.S.C. § 1102(a)(1), and it has allowed plaintiffs to bring suit to recover putative benefits from them. Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps., 974 F.2d 391, 399-400 (3d Cir. 1992). In order "to determine whether informal written or oral communications . . . constitute a plan," Shaver v. Siemens Corp., 670 F.3d 462, 475 (3d Cir. 2012), the court has adopted a test originally set forth in Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982) (en banc). Under that test, an informal plan is established if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Shaver, 670 F.3d at 475 (quoting Donovan, 688 F.2d at 1373.) "The crucial factor in determining whether a plan has been established is whether the employer has expressed an intention to provide benefits on a regular and long-term basis." Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285, 290 (3d Cir. 2014) (quoting Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 789 (3d Cir. 1998)) (internal quotation marks omitted).

In evaluating whether an informal plan exists, a court must consider "all evidence . . . that would indicate the presence or absence of [the] informal employee benefit plan." Henglein, 974 F.2d at 400. Such evidence includes "internal or distributed documents, oral representations, existence of a fund or account to pay benefits, actual payment of benefits, a deliberate failure to correct known perceptions of a plan's existence, the reasonable understanding of employees, and the intentions of the putative sponsor." Id.

Here, neither FRAM nor Plaintiff disputes the existence of an informal plan. For purposes of this motion for summary judgment, the Court also finds that, under the Donovan factors, an informal plan was established. First, a reasonable person could ascertain, based on documents distributed by FRAM between October 2011 and December 2011, that FRAM intended to provide basic life and voluntary life insurance in 2012. A reasonable person could also ascertain the payout amounts for those benefits based on each employee's salary, as well as individual employees' monthly premiums, if any. Second, a reasonable person could ascertain the intended class of beneficiaries for those benefits: employees' designated beneficiaries, including Plaintiff. Third, a reasonable person could ascertain the source of financing for the benefits: a group insurance policy issued by CIGNA. Finally, a reasonable person could ascertain the procedures for receiving the benefits: filling out and submitting the benefit election and enrollment forms during FRAM's 2012 open enrollment period. Accordingly, the Court finds that FRAM established an informal benefit plan; it finds, further, that this plan governs Plaintiff's present claims.

2.  *Contents of the Informal Plan*

The Third Circuit has provided two instructions to this Court regarding the "correct standard" for determining the "terms of the Plan at the time that [Plaintiff's] benefits, if any, vested." Woerner, 658 F. App'x at 95. First, "all . . . evidence" indicating the presence or absence of a particular disputed term should be considered. Id. This evidence includes the same categories of evidence mentioned in Henglein: internal documents, distributed documents, oral representations, actual payments of benefits, any deliberate failure to correct known perceptions of a term's existence, the reasonable understanding of employees as to the existence of the term,

and the intentions of the putative sponsor.  Id. (see Henglein, 974 F.2d at 400).[2]  Second, this Court should exclude evidence of "the version of the Plan delivered to and executed by FRAM after Mr. Woerner's death," as such evidence does not indicate the contents of any informal plan that existed "at the time that [Plaintiff's] benefits, if any, vested."  Id. at 96-97.

In its opposition, FRAM argues that several internal documents create a genuine issue as to whether an actively-at-work provision was a part of the governing informal plan.  FRAM points to several emails, or documents attached thereto, that FRAM exchanged with CIGNA in the final months of 2011.  One of those documents is an email dated November 3, 2011, from a FRAM representative to a CIGNA representative, which contains an attachment listing "Eligibility" information for various "Benefit[s]."  In the portion of that attachment concerning FRAM employees, the eligibility information for "Basic Life/AD&D" and "Supplemental Life – Employee" is: "1st of calendar month following employment. Must be actively at work."  (ECF No. 122-1, Defendant's Statement of Additional Undisputed Material FACTS ("ASUF"), ¶ 66; ECF No. 122-2, Second Declaration of Eric Schueneman ("Schueneman Decl."), ¶ 23, Ex. 8.)  A second document cited by FRAM is an email from a CIGNA representative to FRAM representatives dated October 21, 2011, which contains attachments to be discussed at an "Implementation Meeting" scheduled for October 25, 2011.  (ASUF ¶ 57-58, 60-61; Schueneman Decl., ¶ 17, Ex. 5.)  One of those attachments is a document titled "Plan & Rate Confirmation FRAM Group Operations, LLC."  (Schueneman Decl., ¶ 17, Ex. 5.)  It contains several tables of information, including "Eligibility," for life insurance products.  (Id.)  Under

---

[2] In its opinion remanding the present case, the Third Circuit specifically rejected Plaintiff's suggestion that Court should only consider "communications between the employer and employees and the reasonable employee understandings that result" in order to determine the terms of any governing informal plan.  Woerner, 658 F. App'x at 95 n.5.  The court noted that such categories "are evidence from which the terms of a plan may be inferred[,]" but it was careful to emphasize that other "factors detailed in Henglien" may also be considered.  Id.

"Basic Term Life Insurance" and "Voluntary Term Life Insurance," the "Eligibility" column lists several classes of employees, all of whom are described as "Active . . . Employees." (Id.)

Based on these internal documents, a trier of fact could reasonably infer that the informal life insurance plan governing Plaintiff's present claims included an actively-at-work term. That the plan contained an actively-at-work requirement was plainly the understanding conveyed by FRAM and CIGNA representatives in their communications with each other. To be sure, the absence of any actively-at work provision in FRAM's communications with Mr. Woerner, a fact that is undisputed, might justify the opposite inference: that the informal plan did not include such a term. However, choosing which of these inferences to draw on a motion for summary judgment would constitute an improper weighing of the evidence. Therefore, for the foregoing reasons, this Court concludes that FRAM has presented sufficient evidence to create a genuine issue as to whether Mr. Woerner's life insurance coverage became effective prior to his death.

## IV. CONCLUSION

Accordingly, Plaintiff's motion for summary judgment, pursuant to Fed. R. Civ. P. 56, will be DENIED. An appropriate order shall issue.

    /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: April 27, 2017