**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NOT FOR PUBLICATION

| | |
|---|---|
| LOU ANN WOERNER, as the beneficiary of Michael J. Woerner, | **Civil Action No. 12-6648 (SRC)** |
| Plaintiff, | |
| v. | **OPINION** |
| FRAM GROUP OPERATIONS, LLC, and THAT CERTAIN EMPLOYEE WELFARE BENEFIT PLAN SPONSOED BY FRAM GROUP OPERATIONS, LLC, | |
| Defendants. | |
| FRAM GROUP OPERATIONS, LLC, and THAT CERTAIN EMPLOYEE WELFARE BENEFIT PLAN SPONSOED BY FRAM GROUP OPERATIONS, LLC, | |
| Third Party Plaintiffs, | |
| v. | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | |
| Third Party Defendant. | |

**CHESLER**, District Judge

Plaintiff Lou Ann Woerner ("Plaintiff") brought this action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to challenge a denial of life insurance benefits allegedly owed to her as the beneficiary of her late husband's employee welfare benefit plan. Defendant FRAM Group Operations, LLC ("FRAM")

1

has filed a third-party complaint against the Life Insurance Company of North America ("CIGNA").[1] (ECF No. 134.) CIGNA now moves to dismiss the third-party complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 141.) FRAM opposes the motion. (ECF No. 146). The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, CIGNA's motion will be granted.

**I.    BACKGROUND**

Plaintiff's late husband, Michael Woerner, was diagnosed with brain cancer in July 2010 while he was an employee of Honeywell International Inc. ("Honeywell"). (Am. Compl., ¶¶ 3, 13.) In June 2011, Mr. Woerner commenced short-term disability leave. (Am. Compl., ¶¶ 16.) Approximately one month later, in July 2011, Honeywell sold Mr. Woerner's business unit to FRAM, making him an employee of the latter. (Am. Compl., ¶ 17.) Mr. Woerner remained on short-term disability leave as an employee of FRAM until his death in February 2012. (Am. Compl., ¶ 58.)

In October 2012, Plaintiff commenced the instant action against FRAM. Her amended complaint alleges that FRAM established a benefits plan for its employees and that this plan included basic and voluntary life insurance. (Am. Compl., ¶¶ 1, 4.) The amended complaint further alleges that Mr. Woerner enrolled in these life insurance benefits; that his coverage under them became effective prior to his death; that Plaintiff was named as the sole beneficiary of the benefits; and that Plaintiff has yet to receive the proceeds of those benefits because "Defendants" denied them. (Am. Compl., ¶¶ 30-36, 39-40, 65, 70, 80.)

---

[1] The Court uses "FRAM" to refer collectively to Defendant FRAM Group Operations, LLC and That Certain Employee Welfare Benefit Plan Sponsored by FRAM Operations Group LLC.

After Plaintiff filed her amended complaint, she and FRAM each filed motions for summary judgment. By order dated June 30, 2015, this Court denied Plaintiff's motion and granted FRAM's motion. Plaintiff appealed, and on September 12, 2016, the Court of Appeals for the Third Circuit vacated this Court's prior order, remanding the case "for application of the correct standard as to the existence and terms of the Plan at the time that [Plaintiff's] benefits, if any, vested." Woerner v. FRAM Grp. Operations, LLC, 658 F. App'x 90, 97 (3d Cir. 2016).

The Third Circuit held that the correct standard for determining "the existence . . . of the Plan," if any, governing Plaintiffs claims was whether "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Id. at 95 (quoting Shaver v. Siemens Corp., 670 F.3d 462, 475 (3d Cir. 2012)). Plans which satisfy this standard have been called "informal plan[s]," Smith v. Hartford Ins. Grp., 6 F.3d 131, 136 (3d Cir. 1993); Henglein v. Informal Plan for Plant Shutdown Ben. for Salaried Emps., 974 F.2d 391, 400 (3d Cir. 1992), because they are "constitute[d]" by "informal written and oral communications," Woerner, 658 F. App'x at 90 (quoting Shaver, 670 F.3d at 475), rather than established by a "formal plan document," Henglein, 974 F.2d at 400, or "written instrument" in accordance with 29 U.S.C. § 1102(a)(1).

The Third Circuit further instructed that, in determining the terms of any plan established in the above manner, this Court should exclude evidence of "the version of the Plan delivered to and executed by FRAM after Mr. Woerner's death." Woerner, 658 F. App'x at 96. Such evidence, the Third Circuit held, "cannot provide a basis for ascertaining [Plaintiff's] benefits," Id., because it is not probative of the terms of any informal plan governing Plaintiff's claims. Woerner, 658 F. App'x at 97.

After the case was remanded back to this Court, FRAM filed a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), and Plaintiff filed a second motion for summary judgment. By orders dated April 27, 2017, this Court denied both motions. Approximately one month later, in May 2017, FRAM filed its answer and the subject third-party complaint ("TPC") against CIGNA. The TPC seeks a declaration that "if . . . benefits are due to Plaintiff, those benefits are payable solely by CIGNA" (Count I), and it asserts claims for "equitable relief," pursuant to 29 U.S.C. § 1132(a)(3)(ii), (Count II) and "indemnif[ication]" (Count III). (TPC, ¶¶ 28, 30, 37.)

As grounds for these claims, the TPC avers the following. First, it alleges that "CIGNA . . . issued a group life insurance policy, No. FLX964429, that was effective January 1, 2012 and [that] provides the sole source of funds for benefits payable under the plan" governing Plaintiff's claims. (TPC ¶ 14.) A copy of the group insurance policy (the "Policy") and a copy of a Group Life Insurance Certificate for the Policy are attached as parts of exhibit 2 to the TPC. (Id.; ECF No. 134-2, Exhibit 2, at 1-20, 40-146.) Second, the TPC alleges that "[t]he terms of the plan [governing Plaintiff's claims] are referenced in a Wrap Around Document, titled 'FRAM Group Operations, LLC, Group Benefits Plan (Effective January 1, 2012).'" (Id. at ¶ 17.) A copy of that document is attached as exhibit 3 to the TPC. The document was signed and executed on September 10, 2012. (ECF No. 134-3, Exhibit 3, at 21.) The TPC further alleges that the Wrap Around Document "provides that all benefits payable 'through a Group Insurance Policy shall be paid solely pursuant to the terms of the Group Insurance Policy.'" (Id. at ¶ 18)

Third, the TPC alleges that "[o]n December 2, 2011, CIGNA accepted appointment as the 'Claim Fiduciary' . . . for [the] Employee Benefit Welfare Plan," pursuant to which "CIGNA agreed to . . . be responsible for adjudicating benefits under the Plan, and for deciding any

4

appeals of adverse determinations." (Id. at ¶¶ 15-16.) A copy of the document titled "Employee Welfare Benefit Plan Appointment of Claim Fiduciary" (the "Claim Fiduciary Appointment") is attached as part of Exhibit 1 to the TPC. (Id. at ¶ 12.) This Claim Fiduciary Appointment states that CIGNA "shall have the authority, in its discretion, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." (Id. at ¶ 16.)

Fourth, the TPC alleges that, after Mr. Woerner's death, CIGNA "[a]s Claim Fiduciary . . . made the determination that Plaintiff was not entitled to life insurance benefits because Mr. Woerner did not satisfy the active service requirement." (Id. at ¶ 23.) The TPC also alleges that "CIGNA also denied Plaintiff's claim because [she] had already received benefits under an employer-provided life insurance policy that had been in effect prior to the formation of FRAM." (Id. at ¶ 24.) Finally, the TPC alleges that CIGNA "informed Plaintiff of its denial of benefits under the plan." (Id. at ¶ 25.)

CIGNA now moves to dismiss. It argues, <u>inter</u> <u>alia</u>, that the TPC's allegations, and documents referenced therein, only establish that CIGNA was designated authority and bore obligations with respect to the Policy that it issued and, by extension, with respect to the formal plan that FRAM ultimately established and in which Mr. Woerner did not participate. (ECF No. 141-1, Defendant Life Insurance Company of North America's Memorandum of Law in Support of Its Motion to Dismiss ("Mov. Br."), at 13.) Consequently, CIGNA argues, the TPC's allegations, even if taken as true, do not justify the inference that CIGNA bore an obligation or possessed authority with respect to any informal plan that FRAM may have established and in which Mr. Woerner did participate. (Id.) CIGNA asserts that, at minimum, the Third Circuit's holding in <u>Woerner</u> and its instructions to this Court compel such a conclusion.

In opposition, FRAM argues that the Third Circuit's ruling does not foreclose its claims against CIGNA. (ECF No. 146, Memorandum in Opposition to Third Party Defendant's Motion to Dismiss ("Opp'n Br."), at 4.) Specifically, FRAM argues that, even in light of the Third Circuit's holding, the documents attached to the TPC may regarded as "surrounding circumstances" in determining the terms of any informal plan in which Mr. Woerner participated. (Id. at 4-5.) Thus, FRAM contends, those documents, and the allegations relating thereto, could support a reasonable inference that CIGNA bore fiduciary, statutory, or contractual obligations with regard to the purported informal plan governing Plaintiff's claims.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

When considering a Rule 12(b)(6) motion to dismiss, a court may consider allegations in the complaint, documents attached thereto or specifically referenced therein, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). A "court must accept as true all factual allegations contained in the complaint and all reasonable inferences that can be drawn therefrom, . . . view[ed] . . . in [a] light most favorable to the plaintiff." OFI Asset Mgmt. v. Cooper Tire & Rubber, 834 F.3d 481, 489 (3d Cir. 2016) (citations omitted). On the other hand, it must "disregard rote recitals of the elements of a cause

of action, legal conclusions, and mere conclusory statements." In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 79 n. 4 (3d Cir. 2017) (quoting James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012)).

## III. DISCUSSION

The TPC's allegations refer to, and rely upon, four documents: the Policy, the Wrap Around Document, the Group Life Insurance Certificate, and the Claim Fiduciary Appointment. The first two of these documents, the Policy and the Wrap Around Document, were clearly created after Mr. Woerner's death and, therefore, after Plaintiff's benefits, if any, vested. Therefore, consistent with the Third Circuit's instructions, this Court may only regard those documents as evidence of "the version of the Plan delivered to and executed by FRAM after Mr. Woerner's death" see Woerner, 658 F. App'x at 96. As a result, these documents may not be considered in determining the existence or terms of any informal plan "at the time that Plaintiff's benefits, if any, vested," see Id. at 97. Thus, viewing these documents in a light most favorable to FRAM, a fact finder could only reasonably infer that they pertain to the formal plan that FRAM ultimately established.

The same may be said of the Group Life Insurance Certificate and the Claim Fiduciary Appointment. Although the Group Life Insurance Certificate is undated, it specifically provides that "[i]f questions arise, the Policy will govern," and it states that it merely "describes the benefits and basic provisions of . . . coverage" under the Policy. (Exhibit 2, at 8.) Similarly, although the Claim Fiduciary Appointment was signed in early December 2011, before Mr. Woerner's death, it clearly states that CIGNA's "sole liability to the Plan and to Participants [therein] and Beneficiaries [thereof]" is limited to "the payments of benefits provided with respect to Policies issued by [CIGNA] to the Plan." (Appointment Form, at 1.) In other words,

7

the appointment of authority and acceptance of obligations set forth in that document were limited to plans which were funded by insurance policies which CIGNA had actually issued. Therefore, viewing these documents in a light most favorable to FRAM, a fact finder could also only reasonably infer that they pertain to the formal plan that FRAM ultimately established.

In sum, given the Third Circuit's holding, this Court must conclude that the four documents, and the allegations in the TPC pertaining thereto, cannot justify a reasonable inference that CIGNA possessed authority or bore any obligation with respect to any informal plan potentially governing Plaintiff's claims. Consequently, based on the TPC's allegations, this Court must also conclude that no trier of fact could reasonably infer that CIGNA bore a fiduciary, statutory, or contractual obligation to FRAM or Plaintiff with regard to any informal plan. Therefore, the Court finds that FRAM has failed to plead sufficient factual content to justify the inference that CIGNA is liable to FRAM under any of its theories.

The Supreme Court characterizes dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Such dismissal with prejudice is only appropriate on the grounds of bad faith, undue delay, prejudice, or futility. Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)). "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Defendant points to no unpled facts that might allow an amended third-party complaint against CIGNA to withstand a future motion to dismiss. This Court concludes, therefore, that amendment is futile. Because amendment is futile, the third-party claim will be dismissed with prejudice.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons, CIGNA's motion to dismiss the TPC, pursuant to Fed. R. Civ. P. 12(b)(6), is GRANTED, and the TPC is dismissed WITH PREJUDICE. An appropriate order shall issue.

/s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: October 4, 2017